IN

# THE SUPREME COURT

OF

## PENNSYLVANIA.

MIDDLE DISTRICT—HARRISBURG 1851.

## McClellan's Appeal.

1. The discretion given to the register as to granting letters of administration is limited to a selection from those asking the administration, if competent; from each class entitled to administer, in its order.

2. The widow is entitled to administration upon the estate of her deceased husband, and if she renounces, the register may select from the children or next of kin, preferring males to females; but the widow or next of kin or both combined cannot pass by one of the children or next of kin competent and willing to take the administration, and vest it in a stranger.

3. Though the widow released her right to the administration in favor of persons whom she designated, but who were not entitled to the same, and certain of the children afterwards joined with her in a petition in favor of such persons, it was held, that this was not an absolute, but only a qualified release or renunciation, and the designation being beyond her power, the paper was inoperative, and left her rights and those of the children as before.

APPEAL by James D. McClellan from the decree of the Register's Court of the county of *Lancaster*.

Joseph P. McClellan, late of Paradise township, Lancaster county, died intestate, at the residence of his son James, in Chester county, on the 25th of February last.

On the 5th day of March last, a renunciation, dated the 4th of the same month, of the right to administer, was filed by the widow with the register of Lancaster county, in which she desired that letters

110

of administration be granted to James L. Jones and Samuel B. Thomas; and on the same day, without notice or citation to James D. McClellan, the appellant, letters of administration on the estate of the intestate were granted to those gentlemen.

The paper was as follows:

To the Register for the probate of wills and granting letters of administration in and for the county of Lancaster and State of Pennsylvania.

*Whereas*, my late husband, Joseph P. McClellan, late of the township of Paradise, in said county, deceased, died intestate, whereby the right of the administration of the estate of said deceased did devolve upon me, Mary E. McClellan, widow and relict of the said deceased. Now, know that for divers good causes and considerations, me, the said Mary E. McClellan specially moving, I have released and hereby do release all my right and title to the administration of the said estate to James L. Jones and Samuel B. Thomas, both of the borough of West Chester, in the county of Chester and State aforesaid, and desire that the same may be granted to the said James L. Jones and Samuel B. Thomas, my appointees. Witness my hand and seal, the 4th day of March, A. D. 1851.          MARY E. McCLELLAN,    [*Seal.*]

On the 11th day of April, A. D. 1851, James D. McClellan appealed from the decree of the register granting said letters. A citation was issued to the administrators to show cause why the decree of the register in granting letters of administration should not be set aside.

On the hearing before the Register's Court, the counsel for the appellees presented and read a petition addressed to that court, signed by the widow and her four children, Martha A. Jones, Francis E. McClellan, Joseph F. McClellan, and Robert M. McClellan. It was as follows:

In the matter of the citation to James L. Jones and Samuel B. Thomas, administrators of Joseph P. McClellan, deceased, to show cause why letters of administration should not be revoked. } In the Register's Court of Lancaster county.

To the honorable the judges of the Register's Court of Lancaster county:

The petition of Mary E. McClellan, widow of said Joseph P. McClellan, &c., respectfully represents,

That the said Joseph P. McClellan died on the twenty-sixth day of February last, leaving to survive him the above-named widow and five children, to wit: Martha Ann Jones, Francis E. McClellan, Joseph F. McClellan and Robert M. McClellan, aforesaid, and James D. McClellan, the eldest son aforesaid, by a former marriage; that the said Joseph F. McClellan is a minor above the

age of twenty years, and the said Robert M. McClellan is a minor above the age of seventeen years.

The petitioners further represent that the said Mary E. McClellan released her right to administration of the estate of said decedent, and, with the approbation and consent of the petitioners, requested the register of wills, &c., of said county, to grant such administration to the aforesaid James L. Jones and Samuel B. Thomas; and that in pursuance thereof the said register did on the 5th day of March last grant letters of administration on said estate to the said James L. Jones and Samuel B. Thomas; that the said administrators duly filed an inventory of the personal estate of said deceased, and have proceeded in the administration of the same to the satisfaction of your petitioners; that your petitioners have full confidence in the integrity and capacity of said administrators, and believe that a change of administrators would subject the estate to increased expense and create unnecessary delay in its settlement; and that they are entitled to thirteen-fifteenths of the personal estate of said deceased. They therefore respectfully request that your honors will not revoke said letters of administration granted to the said James L. Jones and Samuel B. Thomas, as aforesaid. And they will, &c.

(Signed)                    MARY E. MCCLELLAN, and others.

The appeal was heard on the 26th of April 1851, and the claim of James D. McClellan to administer was rejected entirely, and the decree of the register confirmed, the court being equally divided.

The intestate left to survive him a widow, Mary E. McClellan, (his second wife,) and issue five children, to wit, James D. McClellan, (the appellant,) *by his first wife*, Martha Ann *intermarried with James L. Jones, one of the appellees*, Francis E., Joseph F., and Robert M. McClellan, the last two of whom are minors.

Exceptions were filed:

1. That the court erred in rejecting the claim of right of James D. McClellan to exclusive administration, after appellees presented the declination of all the other next of kin.

2. In giving the letters to strangers, while any one of the next of kin remained capable to take and asking for them.

3. Even if any discretion were left in this case with the Register's Court, it erred in the exercise of that discretion.

The case was argued by *Parke*, for appellant.—1. He contended that the letters to Jones and Thomas should be revoked and given to James D. McClellan, the appellant. That the widow, having renounced, had no right to dictate to the register who shall administer. He being a judicial officer, must be governed by the law and his own judgment, particularly when there are next of kin of

[McClellan's Appeal.]

age, capable, and willing to take administration. The appellant is of the first class, has not declined, and is competent and willing to take the administration.

2. The next of kin, who have not renounced, preferring males to females among them, are entitled to the administration in preference to creditors and strangers, unless incompetency, unfitness from peculiar circumstances, or inability be established.

3. That the persons to whom the letters in this case were granted had no interest in the residue of the personal estate after payment of debts, and no action of the widow and a portion of the next of kin could deprive the appellant of his right to administer, or at least take part in the administration, and give it to strangers to the estate; the fact of Mr. Jones being intermarried with one of the next of kin, not destroying his character of a stranger under the former, and particularly the present law of this State.

4. If Jones's wife had not declined by her petition presented to court by her husband, he could not administer for her or in her right. By the former law, administration was committed to a *feme covert* alone, the husband assenting and entering into the bond in her place. If he did take part, it could only be by taking letters jointly with her *during coverture*. By the present law it is presumed that a *feme covert* is independent of her husband as to administration, and may administer and give bond, or decline as Mrs. Jones did, as if a *feme sole*. But if she had not declined, with assent of her husband, her right to administer could not be considered while any male next of kin, asking letters, remained undisposed of. Females next of kin, where there are males, are in a second class.

The act of 1832, *Dunlop* 521, has made very little alteration in the law as before understood, in relation to the right to administer: Ellmaker's Appeal, 4 *Watts* 38, per ROGERS, J. The commissioners, in their first report, p. 33, have endeavored in this section to arrange and condense the material provisions of the statute 21 *Hen.* 8, c. 5, *Rob. Dig.* 250, in relation to the persons entitled to letters of administration.

Section 22 of the law of 1832 prescribes with exactness who first, who second, who third, and who fourth are entitled, in classes. The discretion of the register, and, upon appeal, of the Register's and Supreme Court, is limited to select from those *asking*, if competent, in each class, in their order.

The English statute, *Rob. Dig.* 250, says the ordinary shall grant letters to the widow, or to the next of kin, or to both; and when divers, equal in degree of kin, claim, the ordinary to be at his election and liberty to accept any one or more making request where divers require; where any one person as next of kin asks, he is entitled.

The decisions in England upon this statute were that "the ordi-

nary is to grant administration of the effects of the husband to the widow or next of kin; but he may grant it to either or both at his discretion.   If the widow renounce administration, it shall be granted to the children, or other next of kin, in preference to creditors:" *Toller* 86.

The ordinary may grant administration *quoad* part to the wife, and, as to the other part, to the next of kin; for in such case there can be no ground to complain, as the ordinary is not bound to grant it exclusively to either: *Tol.* 87 ; *Rob. Dig.* 252, note.

"But the administration is so much a *claim of right,* that a *mandamus* will be issued by the Court of King's Bench in favor of the party entitled to enforce it :" *Tol.* 87 ; 1 *East* 408.

It seems then the widow is not *exclusively* entitled first, but is only in the first class with the next of kin, from which class the ordinary has a discretion to select either or both, or a part of the next of kin, or a part with the widow.

And so it was here, before our statute of 1832; and is since by section 22, as *it* is but a condensation of the English statute, and not substantially altered : 4 *Watts* 38 ; 1*st Report of Commissioners* 53.

If then the register could not select beyond the first class, if any of them claimed, neither could the widow, nor the widow and all the next of kin but one who claimed, dictate by nomination or otherwise a person of an inferior class or a stranger ; or *they* would be a judge, and more powerful than the law, the register, or the court ; for neither could exclude or pass by a competent next of kin claimant of the first class.

This was the principle settled on argument, in Williams's Appeal, 7 *Barr* 259.   The circumstances material were precisely similar in that case with the present.   There, as here, all the persons entitled of the first class declined, except the claimant, (and his sister,) and the court affirmed the decision of the Register's Court, reversing the decree of the register who had given the letters to two strangers put in nomination by the persons entitled to consideration of the first class, who had declined, giving the letters to the male next of kin who claimed.

Here the very reverse has taken place, the Register's Court confirming the letters to two strangers, because nominated by all the first class who declined; and rejecting the claim of one of that class who had not declined but claimed to be appointed.

This decision has never been shaken or questioned, is in accordance with the English decisions, and is conclusive.   He cited also *Williams on Executors* 246; 3 *Curtis's Rep.* 429; 1 *id.* 50; 10 *Barr* 454, Hassinger's Appeal; 1 *Jones* 157, Beaver's Appeal.

*P. F. Smith,* for appellees.—He contended that the register had authority to grant administration to the widow at his discretion, or to

join with her any of the next of kin, preferring males to females, without notice to the next of kin or creditors.

2. The register was bound to respect the nomination of the widow, especially when there is no other person claiming : and *a fortiori*, the nomination of the widow and all the next of kin but one.

3. The widow having released, if the register was not bound by her nomination, the case was taken out of the statute, the next of kin had no claim *de jure*, and the register was authorized to grant administration to any fit person.

4. Should the grant to the present administrators be invalid, it is still to be referred to the register, to whom to grant administration of the class entitled ; and the Supreme Court will not designate any individual of the class entitled as the proper person.

5. Should the present grant be invalid, the register is bound to make the grant to such individual of the class entitled as may be selected by a majority of interests.

The opinion of the court was delivered May 19, by

Rogers, J.—The argument of the counsel for the appellee is based on the erroneous assumption that the widow is placed in a class by herself, and as such entitled to the administration of the estate ; and this would appear to have been the apprehension of the Register's Court. The statute of 21 *Hen.* 8, c. 5, which, in relation to persons entitled to administration, is the same as the act of 1832, places the widow and next of kin on the same platform : 4 *Watts* 38, Ellmaker's Appeal ; *Rob. Dig.* 250. Under the construction given to that act, the ordinary or register in this State, grants administration of the effects of the husband to the widow, or next of kin, or he may grant it to either or both, at his discretion. If the widow renounces administration, it shall be granted to the children, or other next of kin, in preference to strangers or even to creditors. The discretion given to the register is limited to a selection from those *asking, if competent*, in each class in their order : *Tol.* 86 ; *Wms. Ex'rs* 246. When the widow renounces her right to administer, it is the duty of the register to select from the children, or next of kin, a person or persons competent to perform the duties of administration, preferring males to females. In making the choice among this class, doubtless, great respect ought to be paid to the recommendation of those persons who have the most interest in the assets, on the reasonable presumption that those who have the greatest interest to increase the estate, are most fit to advise as to the administration. Thus far the cases go, but no further. It has never been understood, as is contended, that the widow or next of kin, or both combined, having the greatest stake in the estate, can pass by any one of the children, or next of kin, competent and willing to take, and vest the appointment in a stranger.

On the contrary, directly the reverse is ruled in Williams's Appeal, 7 *Barr* 288. There, two of the sons of testator, who were his executors, having renounced, the register, at their request, granted letters of administration to a stranger, to which a third son and two of the daughters assented. A fourth son and a daughter having petitioned for a revocation, it was held that the register was bound to revoke the letters and grant administration to the person who consented to act. The facts of the case cited are precisely similar, with the immaterial exception that here the widow concurred in the nomination. There, as here, all the persons entitled of the first class declined, except the claimant and his sister, and the court affirmed the decision of the Register's Court, reversing the decision of the register, who had given the administration to two strangers, put in nomination by persons of the first class. Judge COULTER correctly says, that although the executors (also next of kin) may relinquish their own right, they cannot take away the rights of others. In principle, we perceive no difference in the cases. Williams's Appeal rules this point. We cannot affirm this, without reversing that.

But is the paper put in evidence to be viewed as an absolute or conditional, qualified renunciation of the widow and children ? We think the latter is the correct interpretation. It is a release of her right to the present administrators, and nothing more. It would not have been executed, as we are warranted in believing, except on the erroneous supposition that it conferred, the register assenting, on the persons in whom they put trust and confidence, an unimpeachable title to administer the assets. The widow released all her right and title to the administration of the estate to James L. Jones and Samuel B. Thomas, and desired that administration be granted to the said James L. Jones and Samuel B. Thomas, her appointees. It is not an absolute, but qualified release or renunciation. It was, as we think, the obvious intention of the parties, to release on condition that their appointees be permitted to settle the estate. Having attempted what they had no power to do, the whole instrument becomes inoperative, leaving the rights of the widow and the heirs, or next of kin, as before. Being then of opinion that letters of administration were improperly granted to the appellees, the same are hereby revoked. The proceedings are remitted to the register, with directions to grant letters of administration according to law, to the widow, or next of kin, to one or more of them, according to his best discretion.