## Shomo's Appeal.

1. When a widow makes an absolute renunciation of her right to administer, the register may select any one of the sons at his discretion; he is not bound to prefer one elder to a younger.

2. When the register has made a choice his discretion is gone. He has no power to revoke except for cause.

3. The register is not at liberty to disregard the release of a widow to administration in favor of one who belongs to the class from whom selection should be made.

4. When a widow releases her right to administer in favor of another to whom letters are not granted, her right to administer remains.

March 2d 1868.   Before STRONG, READ, AGNEW and SHARSWOOD, JJ.   THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Register's Court of *Berks county*: to March Term 1868.

Joseph Shomo died intestate May 16th 1867, leaving a widow, Mary Shomo, and eight children, of whom John P. Shomo, Charles M. Shomo and a daughter were children of a former wife, and William D. Shomo, Joseph M. Shomo, Harrison Shomo and two daughters were children of his widow.   The names of the sons are given above in the order of their ages.   On the 11th of June the widow filed with the register an instrument under her seal, in which she declares: "I have released and hereby do release all my right and title to the administration of the said estate to my son W. D. Shomo."

The register accordingly granted administration of the intestate's estate to William on 12th of June.

On the 2d of July 1867, Charles M. Shomo petitioned the register, setting forth the grant to William; that no notice had been given to the petitioner and his elder brother; that it was not understood by the children of the decedent, as had been represented by William, that William should be the administrator; that the petitioner is ready, and had been upon the renunciation of the widow, to take letters of administration; that William had selected one of his sureties as appraiser; that the property claimed and returned for the widow had been appraised at half its value, and that he believed that William, with the assent of the widow, designed to manage the estate to the prejudice of the heirs.   The petition prayed that the administration to William might be revoked and granted to others legally entitled.

[Shomo's Appeal.]

William filed an answer admitting certain allegations in the petition, and averred that the widow at first designed to take administration herself and to associate William with her; that the arrangement was known to all the children and not objected to by any of them; that in consequence of her sickness she renounced her right in his favor; he denied the allegations which charged him with misconduct, and he alleged that Charles was an unfit person to receive administration.

The widow presented to the register a certificate stating that she had renounced her right to administer only on condition that administration should be granted to William, and if administration should not be so granted she recalled her renunciation. Five of the children also expressed in writing their satisfaction with William and their belief of the unfitness of Charles.

The register, after hearing, on the 2d of August 1867, revoked the letters granted to William; who appealed to the Register's Court.

Before the Register's Court the register's statement of what occurred before him was received in evidence; it was in substance as follows :—

" Letters of administration were granted by me to William D. Shomo, upon his representations that he attended to his father's business for some years past, that the other sons knew that letters would be taken, and such other representations, from which I understood that the other sons were all agreed that letters should be granted to him. He also filed a renunciation of the widow, releasing her right and title to the administration of said estate to her son William D. Shomo. Mr. Green, his attorney, stated to me that the register could select from the sons any one competent to administer the estate, that an older son had no priority where the interests were equal, and being informed that the other sons were aware that letters would be granted, I did grant letters unto William. Now at the trial of this case it appeared that the other sons knew that letters were to be taken out by the widow and William in jointure, and no proof being produced that Charles, an elder brother, knew that William would take out letters. John Shomo, the oldest brother, is insolvent."

There was much evidence as to the entire capability of William to conduct the administration; also that " William had the principal charge of his father's business for some time before his death; whenever he wanted any one to go to Reading, or other places, he always sent William; this continued up to his death; whenever he wanted anything done he always went to William in preference to the others."

The Register's Court affirmed the decree of the register.

William D. Shomo appealed, and assigned the decree of the Register's Court for error.

[Shomo's Appeal.]

*A. G. Green* and *J. S. Richards*, for appellant, cited 1 Williams on Executors 352; Williams's Appeal, 7 Barr 260; McClellan's Appeal, 4 Harris 110; Ellmaker's Estate, 4 Watts 34; Bieber's Appeal, 1 Jones 159; Hassinger's Appeal, 10 Barr 454.

*A. B. Wanner* and *Samuel L. Young*, for C. M. Shomo, appellee, referred to Boyd's Appeal, 2 Wright 246; McCaffrey's Estate, Id. 331; 1 Williams on Executors 282; Bieber's Estate, Hassinger's Appeal, *supra*.

The opinion of the court was delivered, March 9th 1868, by

STRONG, J.—If the widow's renunciation of her right to administer be regarded as having been absolute, the register had a right to grant letters of administration to any one of the sons of the decedent. Within that class the law left to his discretion to make a selection. He was not bound to prefer an elder to a younger son. Our Act of Assembly makes no distinction between those in the same class. It may be a convenience, but it is not a requisition that seniority shall be regarded. But when the register had exercised his discretion, when he had made a choice among the sons, his discretion was gone. It was no longer in his power to revoke the letters granted, and issue them to another, unless for cause. Undoubtedly a register may revoke letters granted to one belonging to the class entitled to administration, if the grantee have a personal disqualification. This was ruled in Bieber's Appeal, 1 Jones 157. When, however, an appointment has been made and the appointee belongs to the right class, and has no personal disability, revocation of the appointment by the register is a transgression of his power.

In this case it appears that there was a widow of the decedent. Hers was the first right. But she renounced in favor of her son William D. Shomo, who was also a son of the decedent, and the register granted letters of administration to him. He subsequently revoked the letters thus granted, and granted others to Charles M. Shomo, an elder brother. After a careful review of the evidence, we discover no cause for such a revocation, nothing that justified it. The causes assigned are two. The first is that the letters issued to William D. Shomo were procured by misrepresentation. Of this there is no satisfactory evidence. The register states William Shomo represented that the other sons knew letters would be taken, and made other representations, from which he understood the other sons were all agreed that letters should be granted to him. What the other representations were does not appear, but the register states that being assured he could select from the sons any one competent to administer, that an older son had no priority where the interests were equal, and being informed that the other sons were aware letters would

[Shomo's Appeal.]

be granted, he granted them. He adds that it appeared to him the other sons did know that letters were to be taken out by the widow and William jointly, but there was no proof Charles knew William would take them out alone. These are but two unsworn statements, and they are far beyond what was sworn to in the Register's Court. But giving them their fullest effect, they come far short of proving any fraudulent representations by William D. Shomo, and it is manifest that it was not for this cause, nor for the other urged here, that the letters were revoked. It is altogether probable the register thought he had made a mistake in granting them to a younger son, without the assent of an elder one. Such a mistake, if it was one, was a mistake of discretion, not of power, and hence it was irremediable after it was made.

The second cause urged upon us to justify the revocation of the letters is, that William D. Shomo was personally disqualified. It is said he transacted business for his father before his decease. This, it is said, rendered him incompetent, and we are referred to those cases in which it has been held that letters ought not to be granted to an heir who has the principal part of the estate in his hands, or who is a litigant with the estate: Bieber's Appeal, *supra;* Ellmaker's Estate, 4 Watts 38; Hassinger's Appeal, 10 Barr 454. These cases are totally unlike the present. William D. Shomo was not a litigant with the estate, nor, as it appears, had he any interests adverse to those of the other heirs. The fact that he had done business for his father was no disqualification. This is very plain when we observe what the business was, which it was alleged he had done. He went to Philadelphia, to Reading and to other places for his father, and this is all. If such acts disqualify a son for administering upon his father's estate, most dutiful sons are disqualified, and administration must often go into the hands of strangers, to the exclusion of the next of kin.

There was then no cause for the revocation of the letters granted to William, and certainly none for granting them to Charles. The register transcended his power after he had made a selection among the sons.

And even at first, when it was an open question, William should have been preferred to Charles, as he was. Saying nothing of the fact that he was the choice of six of the eight children of the decedent, he was the nominee of the widow. She released her right to the administration to him. This the register was not at liberty to disregard. In Ellmaker's Estate, 4 Watts 34, it was said that the register is bound to respect the nomination of the next of kin, or persons entitled to the administration. The same thing was said, in effect, in Bieber's Appeal. The personal fitness of William is proved beyond question.

But more than this, the widow's release or renunciation stood

in the way of the revocation of the letters first granted, and a grant of others to Charles M. Shomo. Her release was not an absolute renunciation. It was no more than conditional. If letters were granted to William it became absolute, if not, her right to administer remained. Such is the doctrine of McClellan's Appeal, 4 Harris 116. The decree of the Register's Court must therefore be reversed.

> It is ordered, adjudged and decreed that the decree of the Register's Court, affirming the decree of the register, which revoked the letters of administration granted to William D. Shomo, be reversed, and the said letters are hereby affirmed. And it is further decreed that Charles M. Shomo pay the costs.