# George W. Levan's Appeal.

1. Within the class entitled to letters of administration, the selection of
an administrator is in the discretion of the Register of Wills ; and his
decision is absolute, unless personal incompetency or other disqualifica-
tion in the person chosen is shown.

2. One who is insolvent is disqualified from being appointed an admin-
istrator.

3. Insolvency is the state of a person who from any cause is unable to
pay his debts in the ordinary or usual course of trade.

March 4th, 1886.    Before MERCUR, C. J., GORDON,
PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

APPEAL from the Orphans' Court of *Berks county :* Of
January Term, 1886, No. 322.

Appeal of George W. Levan from the decree of the Orphans'
Court of Berks County revoking the letters of administration
granted to appellant and referring the matter back to the Reg-
ister for the appointment of another person as administrator of
Gideon Levan, deceased.

The following are the facts as they appeared before the
Register of Wills :—

Gideon Levan died July 15th, 1885, leaving no widow, but
six children in the following order as to age :—

1st. Lucy, wife of David Wolf, living in Illinois.

2d. Maria, wife of Franklin Bridegam, of Berks county.

3d. George Levan, living in Reading, Berks county.

4th. James Levan, living in Columbus, Ohio.

5th. Louisa, wife of ——:—— Eckenrode, living in Reading.

6th. Daniel M. Levan, living in Kutztown, Berks county.

He left personal property worth about $430, and a farm
worth about 6,000.

[Levan's Appeal.]

On November 11th, 1885, George M. Levan, the oldest son, and Daniel M. Levan, the youngest son, both appeared before the Register of Wills and demanded letters of administration. Both were examined under oath by the Register. George claimed as oldest son, and objected to Daniel because Daniel has a claim against the estate of $2,000, which George contests. Daniel objected to George on the ground of alleged insolvency, and called witnesses to prove his insolvency. The effect of the testimony of these witnesses on the mind of the Register was to prove George's solvency, good character, and fitness to administer. He therefore granted letters to George as first in right.

From this decision Daniel appealed, and on hearing in the Orphans' Court the testimony of Daniel, George, and Louisa was again heard by the court, SCHWARTZ, J., who reversed the Register's decision, held George Levan to be incompetent, and remitted the matter to the Register with instruction " that the contest of an administration should continue between Daniel M. Levan and Franklin Bridegam." In making said decree the court filed the following opinion :—

On or before the 14th day of November, 1885, George Levan and Daniel M. Levan appeared before the Register of Wills, etc., for said county, and demanded letters of administration, each for himself, on the estate of their father, the said decedent. The Register on said named day, after having heard the proofs and allegations of the said applicants, awarded and issued letters to George Levan, the eldest son.

On November 21st, 1885, Daniel M. Levan, the youngest son, took an appeal from said decision of the Register to the Orphans' Court. The appeal came on to be heard on December 22d, A. D. 1885. From the records and evidence submitted, it appears that prior to the present proceedings said Daniel M. Levan and one Franklin Bridegam, a son-in-law, were applicants for administration of this estate. At which the Register, after having heard the parties, decided that said George Levan was insolvent; Daniel M. Levan, a creditor, whose claim said George averred he would contest, and for that reason granted the letters of administration to said Franklin Bridegam. From this decision Daniel M. appealed. After the hearing of said appeal by the Court, it decided that under the statutes and the constructions put thereon, the Register must prefer males to females when in equal degree of consanguinity. That the mere allegation of George, that he would contest the claim his brother Daniel held against the estate, without assigning any objection to its validity, did not disqualify him and make him a litigant of the estate.

The court for said reasons reversed the Register and annulled

the appointment of Bridegam, and referred the matter back to him for further proceedings.

From all of which it should have appeared to the Register that the court intended that the contest for administration should continue between said Daniel M. Levan and Franklin Bridegam. In other words, if the Register should, after due and full investigation, find Levan to be a litigant creditor against the estate, then to reissue administration to Franklin Bridegam ; if otherwise, then letters to Daniel M. Levan.

The court is fully satisfied from the evidence in this and former proceedings that George Levan is not legally entitled to administration on this estate. The evidence clearly discloses that he has no property except such as is exempt from levy and execution. His share of inheritance in this estate must not be taken into consideration in passing upon his solvency : Edward's Estate, 5 W. N. C., 432.

It has been shown that he has quite a number of small debts, some of long standing. The evidence also shows that in the past he could not be compelled to pay under process of law. It is, however, contended that this estate would be safe under his administration, for the reason that his sureties and other friends would see that the funds were kept out of his control. Of this fact there can be no doubt. The parties interested and concerned with him in this matter would no doubt protect the estate. But as the precedent is bad, and inasmuch as the law and the court have no hold upon such protectors, it cannot recognize them. Administrators should be realities, not mere figure-heads. There is now a case pending before me where the accountant is only such in name. He is the responsible party before the law, but others have the fund. In my opinion no court should lend itself to such arrangements. For these reasons the proceedings had in this matter before the Register are reversed.

The matter is again referred back to the Register for further investigation, and appointment of a proper and legal person as administrator of this estate, with instructions that he observe laws laid down to him in this opinion.

From this decree George W. Levan took this appeal assigning the decree for error.

*C. H. Schaeffer*, for appellant.—George Levan is held to be incompetent to have letters of administration granted to him because of his insolvency. Is he insolvent ?

The court quotes as a principle of law that the administrator's share in the decedent's estate must not be taken into consideration in passing upon his solvency. This is not the law, and no such principle is asserted in Edward's Est., 5 W. N. C.,

[Levan's Appeal.]

432, which is cited by the judge. Insolvency is " the inability of a person to pay all his debts, or the state of wanting property sufficient for such payment:" Webster, Bouvier; Suydam v. N. West. Ins. Co., 1 P. F. S., 398. Is this the state of one owning $300 worth of personalty, one sixth of a farm worth $6,000, and owing debts amounting to $11.60?

Daniel is a litigant with the estate, with interests antagonistic to those of his brothers and sisters and to the estate of the intestate, and is therefore not competent to administer: Elmaker's Estate, 4 W., 34; Hassinger's Appeal, 10 Barr, 454; Bieber's Appeal, 1 J., 157; Heron's Estate, 6 Phil., 87; Welch's Appeal, 1 Penny., 9.

*Isaac Hiester* (*F. K. Flood*, *William Kerper Stevens* with him) for appellee.—Our Act of Assembly makes no distinction between those in the same class. The eldest son has no greater right to the administration than the younger: Shomo's Appeal, 7 P. F. S., 358.

If things were precisely equal, as a matter of convenience, perhaps, the elder son might be preferred. But where the wish of the majority of interests is toward the younger son, he should be appointed: Williams on Executors, Vol. 1, p. 493.

The primary object in the appointment of an administrator is the interest of the estate; that person who is best able to manage the estate, both for the heirs and creditors, should be appointed; and especially should the wishes of the heirs be regarded. " That person should be selected amongst those of the same degree of kindred with whom the majority of parties interested are desirous of entrusting the estate:" Williams on Executors, Vol. I., p. 492.

From amongst the six children of Gideon Levan, but four have expressed any preference as to who should administer. Daniel, the youngest, has applied for letters. Louisa and James has renounced in his favor. The remaining one, George has asked for his own appointment. The Register in granting letters is bound to respect the nominations of the next of kin when they decline their right to administer; he is not at liberty to disregard the clearly expressed wishes of the parties preferred by law and entitled to the estate, even if they be non-residents of the Commonwealth: Ellmaker's Estate, 4 W., 34; McClellan's Estate, 16 P. F. S., 110; Jones' Appeal, 10 W. N. C., 249.

George is insolvent.

" Insolvency means the condition of a person unable to pay his debts as they fall due, or in the usual course of trade and business: II. Kent Com., 11 ed., p. 490; 3 Gray (Mass.), 600.

This disqualifies him.

Mr. Justice CLARK delivered the opinion of the court, March 22d, 1886.

On the 11th November, 1885, George W. Levan and Daniel M. Levan appeared before the Register of Wills of Berks county, each for himself, claiming to receive letters of administration upon the estate of their father Gideon Levan, deceased. On the 14th November, 1885, letters of administration were awarded to George W. Levan, the oldest of the sons of said decedent, he giving bond in $2,000, with approved security, as required by law. From this decision of the Register, Daniel M. Levan entered an appeal to the Orphans' Court of Berks county, upon the hearing of which appeal the proceedings of the Register were reversed, the letters to George W. Levan revoked, and the matter referred back to the Register, for further proceedings according to law. From the decree of the Orphans' Court this appeal is taken.

The decedent left no widow ; his sons, therefore, constitute the class first entitled, and within that class the law left the selection to the discretion of the Register. It is true the Register was not bound to prefer the elder to the younger son ; seniority gives no absolute right : Shomo's Appeal, 57 Penn. St., 356. All other things being equal, however, this might incline the balance of judicial discretion : Brubaker's Appeal, 98 Penn. St., 21. But, having chosen the elder unless some personal disqualification is shown, his decision is absolute, and should not have been disturbed.

But there may be personal incompetency, or other disqualification in individuals belonging to a preferred class. "In such cases," as this court said in Cornpropst's Appeal, 33 Penn. St., 538, "the Register is at liberty to pass by the incompetent individual and grant letters to others who would not have been entitled to them, but for that incompetency. The act does not define the grounds of disqualification. They are to be sought for in the decisions of the English Ordinary, and in the practice of this state, before the passage of the Act 15th of March, 1832. There is no doubt that insolvency is one. Those interested in the estate are entitled to the security of an administrator's personal liability, as well as to that of his bail. If letters may be granted to an insolvent person, they have but the single security of the sureties in the administration bond. Besides, likelihood to prove insolvent is a ground for removal under the 22d section of the Act of Assembly of the 29th of March, 1832. Certainly the Register may not appoint one whom it would be the duty of the Orphans' Court to remove, unless he should give other and further security than the Register may require."

The learned judge of the Orphans' Court decided that

[Levan's Appeal.]

George W. Levan was insolvent; the evidence, he says, discloses that, excluding his share of the inheritance from his father, he has no property, excepting such as is exempt from execution; that he has a number of small debts, some of long standing, and that in the past he could not under process of law have been compelled to pay, and it was upon this ground that the proceedings of the Register were reversed and the letters awarded to George W. Levan were revoked. The same questions had been previously considered by the Register,who concluded that the suggestion of insolvency was not sustained. That we might determine this question of fact intelligently, we have read with some care all of the evidence in the cause, and from this we learn that George W. Levan is of the age of forty-three years; that he is by trade a house carpenter, and for fourteen years has been, for the most part, employed in the car shops of the Philadelphia & Reading Railroad Company, and that his average earnings amount to $42 per month. It is clearly shown that he is a sober, steady and industrious man, and that he is in every respect capable of correctly administering the estate. He is not the owner of any real estate, apart from his interest as one of the six heirs of his father, but has household furniture and property to the amount of about $300. His father's estate has been estimated at from $6,000 to $6,500; indebtedness to the amount of $700 is conceded, but Daniel M. Levan, the contestant, claims to hold his father's note for $2,000, and Louisa, a sister, whose interest seems to be enlisted with the contestant, has also a claim for $800. The validity of one or both of these claims George has denied, and threatens, at the proper time to contest them, hence this scramble for letters of administration.

At the time this contest began it appears that George W. Levan was indebted to several persons in small amounts. W. J. Lamm testified that George had bought some flour from him, and owed him about $20; but that as he believed George to be an upright and good citizen, he believed the debt would be paid; that he was then working for the witness, and reducing the debt. It was subsequently shown that this claim was all paid but $3. Amelia Hart testified that George W. Levan was indebted to his uncle, John Hart, for money borrowed some sixteen or seventeen years ago; that the note was renewed two or three years ago, and the debt was never denied. The witness further stated that as George was a sober, honest man, she had no reason to doubt that he would pay the debt. It now appears that this debt has since been fully discharged. Dr. Markley stated that he had a small bill against George, but this has also been paid. Christian Bauknecht says that George has owed him $11.63 for over a

# 300

[Evans *v.* Maury.]

year. The only debts now remaining undischarged are account of Bauknecht for $11.63, W. J. Lamm, balance $3, and perhaps $5 to $15 to the contestant, Daniel M. Levan.

Insolvency is the state of a person who, from any cause is unable to pay his debts in the ordinary or usual course of trade. A man, to avoid insolvency, is not expected to be able, at once, to put his hand in his pocket and pay every debt he owes ; but he must be able to pay, or to provide for, all his debts, as they fall due, in the usual course of business. It is nowhere shown that George W. Levan was unable to pay his debts as they were demanded, and although he did not claim to own property in excess of $300, it is not shown that legal process was at any time resorted to by any one for collection. He owned but little, it is true, but he owed less, and when objection was taken to his financial state, he was able, without using any part of the moneys or property of the estate, and without borrowing elsewhere, to pay off nearly all he owed. With an income of $42 per month, and property worth $300, besides his interest in the estate, he certainly cannot be said to be insolvent because he owes from $20 to $30.

As an insolvent person in his desperation may be driven to apply the property of the estate in his own relief, public policy provides that he shall not be placed in a position of such peril ; but a poor man, if he provide the requisite security, and is sober, honest, and capable, cannot be denied the right to administer simply because he is poor.

We think, for the reasons stated, that the learned court below was wrong in reversing the decision of the Register, and that the letters of administration committed to George W. Levan should not have been revoked.

> The decree of the Orphans' Court is therefore reversed, the decision of the Register reinstated, and the letters of administration, heretofore granted to George W. Levan upon the estate of Gideon Levan, deceased, are restored.
>
> It is further ordered that the appellee pay the costs of this appeal.