Schulz Estate.

Argued October 2, 1952. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Daniel H. Shertzer*, with him *Charles E. Workman*, for appellant.

*Robert Ruppin*, with him *Joseph R. Byars*, for appellees.

OPINION BY DITHRICH, J., January 20, 1953:

Max Schulz died testate May 30, 1917. He directed that his executor sell and dispose of his real estate within two years after his death. He divided the proceeds

into seven equal shares and gave one share to each of his six-named children, including his son Edward (also known as Edwin J.) Schulz, whom he appointed executor. He directed that the seventh share be retained by the executor and so much thereof as the executor deemed necessary be used for the purchase of a dwelling house for his son Frank and the son's wife Lena, the balance, if any, to be invested and the income therefrom paid to. Frank for life. At the death of the survivor of Frank and Lena the testator directed that the real estate so purchased for them be sold and the proceeds divided among their children in equal shares. Lena predeceased the testator.

The executor did not sell the land within two years as directed, but on March 24, 1920, six of the children of Max Schulz, and the spouses of those then married, joined in a deed to convey to their brother Edwin, executor of the estate, the land of which their father died seized. Also under date of March 24, 1920, the six children of testator, who executed the deed, signed and gave a release to the executor. The release set forth that each had received payment in full satisfaction of his or their respective share in the personal estate of decedent and approved the "separate account or statement submitted to us" showing the executor's administration of the estate. As stated in the opinion of the learned president judge of the court below: "The execution of the deed and the release brought amity to the family for only a short while. On February 24, 1921, John H. Schulz petitioned for a citation directed to Edwin, the executor, to show cause why he should not file an account of his administration. The petition alleged the failure of Edwin to pay John his share as shown by the account exhibited at the time the release was executed and that the release therefore was obtained under false and fraudulent representation. On

May 15, 1922, in an opinion filed by the late President Judge Eugene G. Smith, the rule granted to show cause why the citation should not issue was discharged. It was held that 'the estate has been settled and it was done agreeably to all parties.' " Nothing further was done until May 13, 1938, when there was filed what was designated as "the first triennial account of Edwin J. Schulz, testamentary trustee for Frank Schulz." The account was neither advertised nor audited.

On July 27, 1951, an amended petition was filed for the appointment of an administrator d.b.n.c.t.a. of the estate of Max Schulz and the court granted a rule on all parties in interest to show cause "why the Court should not order and direct the Register of Wills . . . to grant new letters in this estate in such form as the case may require to the person or persons entitled thereto." An answer was filed and preliminary objections were filed to the answer. The court below overruled the preliminary objections and discharged the rule.

As stated in the opinion of the court below: "The issue is whether or not this Court should authorize the issuance of letters of administration d.b.n.c.t.a. thirty-four years after the death of Max Shulz for the purposes stated, namely: (1) To exercise the direction to sell; and (2) to account."

The executor died in 1941. Frank Schulz, the life tenant, died in 1943. Appellant was born March 2, 1909, and was of age when the trustee's triennial account was filed. She takes the position that the aforesaid deed and release to the executor are void and of no effect since the children of Frank Schulz were not parties thereto in person or by guardian and that their father, Frank Schulz, the cestui que trust, who was a party to each of them, had nothing to convey.

Appellees take the position that "Appellant did not at any time ask for a review of the decree of 1922 holding the estate settled, did not file exceptions to the trustee's triennial account or take any steps to have it audited, and did not at any time move to have the executor or trustee cited to file an account or to execute the direction to sell until 1951—thirty-four years after the death of the testator, twenty-one years after her coming of age, ten years after the death of the executor, and eight years after the death of the life tenant."

The petition does not allege that there was an inadequacy of consideration for the sale, or any overreaching, fraud or concealment by the executor. In fact, there could not have been since the sale was ratified by the deed and release executed by all the testator's children, including the cestui que trust, and both duly recorded in the office for the recording of deeds. The sale by the executor to himself was voidable, but not void. *Hadesty v. Hadesty*, 331 Pa. 81, 200 A. 6.

The present petition was brought under the Act of March 15, 1832, P. L. 135, which provides that "No letters of administration shall in any case be originally granted upon the estate of any decedent, after the expiration of twenty-one years from the day of his decease, except on the order of the Register's [Orphans'] court, upon due cause shown." In *Hanbest's Estate*, 21 Pa. Superior Ct. 427, 429, this Court said: "The purpose of the legislation quoted is manifestly to take from the register and confer upon the orphans' court the power and duty to determine whether letters of administration shall be granted upon the estate of a decedent after twenty-one years. . . . The intervention of the court to prevent unnecessary and intrusive issuance of letters of administration long after the decedent's death is quite as necessary in the case of a

*second or third* issuance as in the case of an original grant." (Emphasis added.) Quoted with approval by the Supreme Court in *Treat's Estate,* 341 Pa. 342, 19 A. 2d 354, in construing section 2(b) of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §342, "which is in practically the same language."

In the latter case it was held that the appointment of an administrator d.b.n.c.t.a. is discretionary with the orphans' court. In granting the prayer of the petition in that case the court ruled that in addition to there being a vacancy in the office of the administrator of the estate there were also "unadministered assets."

In order to bring the instant case in line with *Treat's Estate,* supra, it is urged by appellant, but without the citation of any authority, that the land the executor was directed to sell, being still unsold, is "unadministered assets." This contention, however, does not take into account the sale of the land to the executor, which, as we have heretofore held, was not void, but merely voidable.

The appointment of an administrator d.b.n.c.t.a. involves the exercise of a discretion which is lodged by the terms of the Fiduciaries Act in the orphans' court, and we find no abuse of discretion by the court in refusing an appointment thirty-four years after the death of the testator. Furthermore, as stated in the opinion of the learned president judge of the court below: "Proceedings in the orphans' court are equitable in character. See McGovern's Estate, 322 Pa. 379, 381; Cannon's Estate, 330 Pa. 513, 514. And laches bar relief in equity whenever in the chancellor's discretion a party has by his delay disentitled himself to the remedy sought: Grange National Bank v. First National Bank, 330 Pa. 1, 3."

Fitting the language of the court in the opinion filed dismissing the unamended petition by a brother

of appellant, whose appeal to this Court has been discontinued, to the amended petition filed by appellant, the court continued: "During the [twenty-one] years that have elapsed since the petitioner attained legal age [she] was content to sleep upon whatever rights [she] possessed. . . . Not only was petitioner content to wait until the death of both the executor and the life tenant, but it was not until eight years after the death of the latter that [she] was motivated to initiate the present proceeding. The indolence of the petitioner in pursuing [her] rights is of [her] own choosing. [She] shows no impediments to an earlier legal assertion by [her]; nor that [she] was fraudulently kept in ignorance. [She] has not shown that [she] was not as fully possessed of the status and facts of the estate of Max Shulz eight years ago, upon the death of the life tenant, or [twenty-one] years ago, when [she] attained [her] majority, as [she] is now. [Her] sleeping upon [her] rights for so long a period causes laches to arise and deny [her] relief. . . .

"When, as here, the fact of laches is apparent on the face of the petition, the Court may in its discretion and on its own motion deny relief on that ground: Grange National Bank v. First National Bank, supra."

In *Church v. Winton,* 196 Pa. 107, 108, 109, 46 A. 363, the Supreme Court, in an opinion by Mr. Justice MITCHELL, said: "The law governing this class of cases is entirely well settled. If a trustee buys the trust property . . . he will be presumed to buy and hold for the benefit of the trust. But the trustee's title as purchaser is not void; it is voidable only at the option of the cestui que trust, and when the latter has knowledge of the facts he must assert his right with reasonable diligence." In that case a delay of twenty-one years, the same period that elapsed between appellant's coming of age and the filing of her petition, was held to

be far too great. The Court said (p. 110) : "A much shorter period would have been sufficient to bar his claim in equity on account of laches, for as already said the cestui que trust must assert his equity with reasonable diligence."

The decree of the Orphans' Court is affirmed at the costs of appellant.