## Cleaver Estate

*Peter G. Schaaf,* for petitioner.
*Barney Bernard,* for respondent.

ROBERTS, P. J., August 27, 1958.—This is the Commonwealth's appeal from the refusal of the register of wills to revoke letters of administration granted on the petition of the principal creditor. The essential facts are not in dispute.

Decedent died intestate March 3, 1958, without leaving any surviving next of kin within the limits of section 3 of the Intestate Act of April 24, 1947, P. L. 80, 20 PS §1.3. On March 14, 1958, a petition for letters of administration was filed. The register gave notice by registered mail, dated March 17, 1958, addressed to the Secretary of the Commonwealth of the filing of the petition and of hearing thereon on March 31, 1958. The return receipt indicates that the notice was received by the Secretary of the Commonwealth on March 19, 1958. At the time fixed for hearing no one appeared for the Commonwealth, and the register issued letters of administration in accordance with the petition filed. By letter dated March 28, 1958, but postmarked Harrisburg, March 31, 1958, the Department of Revenue acknowledged receipt by that department of the register's notification dated March 17. The Commonwealth's renunciation and designation of its nominee was dated March 28, 1958, but was not made known to the register until after letters were issued. On May 8, 1958, the petition for revocation of letters was filed by the Commonwealth's nominee. The duly appointed administrator filed an answer on May 15, 1958, and on June 20, 1958, counsel for parties filed a stipulation of facts. The register on July 10, 1958, refused to revoke the letters, and this appeal from that refusal was heard by us on August 14, 1958.

It is clear that in the absence of a spouse or a relative of decedent as close as a first cousin, the Commonwealth, under section 3(6) of our Intestate Act, is entitled to take in its capacity as statutory heir. It

is the contention of petitioner that the Commonwealth as statutory heir has "a superior right to administer the estate" and that it has the right to have its nominee appointed administrator. The Commonwealth claims this position by virtue of the provisions of section 305(*b*)(3) of the Fiduciaries Act of April 18, 1949, P. L. 512, 20 PS §320.305. This section lists the persons entitled to letters of administration and provides that except for good cause letters shall be granted by the register in the following order:

"(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class;

"(4) The principal creditors of the estate;

"(5) Other fit persons;

"(6) If anyone of the foregoing shall renounce his right to letters of administration, the register, in his discretion, may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause."

Distribution to the Commonwealth, as statutory heir under the Intestate Act, will be only after it is clearly established to the satisfaction of the auditing judge that there are no surviving relatives of decedent closer than second cousins. This will require proper investigation on the part of the fiduciary prior to audit, and report by the fiduciary at the audit in accordance with Supreme Court Orphans' Court §13, R.1, and our supplemental local Orphans' Court Rule 69.5. If, subsequent to the grant of letters or after investigation, next of kin appear who are entitled to share in the estate, the Commonwealth would not then be interested in the estate as statutory heir. Its interest would be merely that of sovereign, without any claim to control the administration of the estate. Thus

far we have only the averment of a creditor that decedent died without next of kin. This appears to be a rather uncertain basis upon which to exercise so absolute a right as the Commonwealth here claims.

The Commonwealth urges that Springer Estate, 27 Northumb. 148, 5 Fiduc. Rep. 528, supports its contention and requires revocation of the letters issued. With this conclusion we cannot agree. The instant factual situation is clearly distinguishable from the Springer case. There the register acted without notice to the Commonwealth prior to the grant of letters of administration. That court very properly held that granting of letters without notice to the Commonwealth, the apparent sole heir, was without authority of law and that letters so issued must be revoked. We view the Springer case as holding only that failure to give notice to the Commonwealth made the proceeding before the register defective and the grant of letters invalid. In the case before us notice was duly given and actually received by the Commonwealth before letters were granted.

We find little merit in the argument that the Department of Revenue, or its local representative, had insufficient notice in advance of the hearing and hence was denied the opportunity to be heard by the register before the grant of letters. The Commonwealth's Department of State received the notice on March 19, 1958, but for some unexplained reason that notice did not reach the Deparment of Revenue until March 28, 1958, although both departments are located in Harrisburg. We recognize that notice should have been directed initially to the Department of Revenue by the register, nevertheless the notice did reach that department by March 28, Under the circumstances, we cannot say that the Commonwealth was without reasonable notice of the hearing. The failure of the Commonwealth to appear at the time fixed for the grant of

letters did not prevent the register from performing that duty.

"The statute commits to the Register of Wills, in the first instance, the duty to grant letters of administration and in the performance of that duty the Register acts in a judical capacity. On appeal from his action judicial review is confined to a determination whether the Register of Wills has abused his discretion in the appointment of an administrator": Schultz Estate, 392 Pa. 117, 123.

The person appointed by the register is competent and qualified to act as administrator as is the Commonwealth's nominee; both are suitable and qualified in every respect to properly administer the estate. We are unable to see how the Commonwealth either as statutory heir or as sovereign is, or could be, prejudiced by the register's refusal to revoke the letters granted, provided the Commonwealth is given notice, so long as it remains a party in interest, at all proper stages of administration, including the filing of account and call for audit. In our opinion the distributive share to which the Commonwealth may be entitled will not be adversely affected in any degree by its inability to designate the administrator. The award to the Commonwealth will be precisely the same, both in amount and date of distribution, whether its nominee is the administrator or whether some other suitable person serves in that capacity. The Commonwealth, as statutory heir, may hold any administrator to full account, whether the fiduciary is its nominee or that of another.

There is of course no basis for concluding that the Commonwealth's selection of an administrator made in Harrisburg represents a better choice of a fiduciary than that made by the register at the scene of administration after due notice to the Commonwealth. It should perhaps be noted that appellant's petition for

revocation does not allege nor suggest that the person appointed by the register is in any respect unsuited or that the Commonwealth's nominee is more competent to administer the estate.

In passing, it might be observed that there is grave doubt that the Commonwealth should assume the additional function of active participation in the administration of estates, even through a nominee. The proper administration of decedent's estates is a complex and specialized undertaking that requires continuous and minute attention. Realistically viewed, this is a technical field in which the Commonwealth is without experience or special qualification, and it is doubtful that the Commonwealth's participation would assist in either the speed or economy of administration. Injecting the Commonwealth into this activity would, among other things, place additional administrative burdens and expenses upon the Commonwealth in designating at the seat of government a local nominee, without resulting in any corresponding benefit to the Commonwealth as heir or sovereign or to the administration of the decedent's estate. It seems apparent that this represents the legislative intention, and the failure of the legislature to specifically "except the Commonwealth" in the original act (section 305(b) (3), Fiduciaries Act) was merely an oversight and not the expression of a direct intent to the contrary. This the legislature sought to reaffirm and clarify in House Bill 1481 of the 1957 session by particularly eliminating the Commonwealth from those entitled to letters of administration. Even though the Governor saw fit to veto the bill, it nevertheless indicates that the legislative intent is to exclude the Commonwealth from this phase of the administration of decedents' estates.

The conclusion we have here reached is in harmony with Skriziszouski Estate, 382 Pa. 634, in which the

341

Supreme Court held that the Commonwealth by virtue of the provisions of our Intestate Act was not "next of kin or heir" within the meaning of an Act of Congress. At page 638 the Supreme Court said: ". . . The Intestate Act never calls or refers to or terms or describes the Commonwealth as a next of kin or heir. The Act does use the word 'descend'—it would be just as logical to claim that the Commonwealth was a 'descendant' as to claim it was 'a next of kin or an heir.' Only in the loosest imaginable sense has a 'State' ever been referred to or could be referred to as a next of kin or heir."

Careful consideration of all of the attending circumstances fails to disclose any abuse of discretion on the part of the register. The letters which the Commonwealth here seeks to revoke were properly and lawfully granted, and we find no legal basis for their revocation. The action of the register must, therefore, be affirmed and the appeal dismissed. . . .