525 A.2d 788

**ESTATE OF Sandra L. OSBORNE, Deceased.**

**Appeal of Margaret FAULKNER.**

Superior Court of Pennsylvania.

Argued May 12, 1986.

Filed May 12, 1987.

202

M. Maley Peterson, Philadelphia, for appellant.

Before CIRILLO, President Judge, and CAVANAUGH, McEWEN, BROSKY, DEL SOLE, BECK, TAMILIA, KELLY and JOHNSON, JJ.

KELLY, Judge:

In this case of first impression, we are called upon to determine whether the Orphans' Court division of the Courts of Common Pleas may direct the Register of Wills to issue letters of administration to an individual selected by the Orphans' Court. We hold that, upon finding that the Register abused its discretion in choosing an administrator, the Orphans' Court may determine the proper individual to act as administrator, and direct the Register to issue letters of administration to that individual.

 This case involves an appeal from an Order directing the Register of Wills to revoke a previous grant of letters of administration and to issue letters to the Dauphin Deposit Bank and Trust Company (Bank).[1] Appellant argues that

1. The appellant properly filed a direct appeal to this Court without first filing exceptions in the court below. Rule 7.1 of the Pennsylvania Orphans' Court Rules, entitled "Exceptions," provides that exceptions shall be filed as local rules prescribe. The applicable Lebanon County Local Rule, Orphans' Court Rule 7.1A provides:

*No exceptions shall be filed* to orders or decrees entered in proceedings *unless the right to except thereto is expressly conferred by act of assembly, by general rule, or by special order;* and all decrees other than those to which exceptions are so allowed to be taken, shall be final and definitive.

(Emphasis added). No special statutes, general rules of court or special orders exist which confer the right to file exceptions to an order appointing an administrator; thus, the appellant acted properly in filing a direct appeal. In *Estate of Kotz,* 486 Pa. 444, 406 A.2d 524 (1979), our Supreme Court construed a local rule which is virtually identical to Lebanon County Local Rule 7.1A. The court held that neither Pennsylvania Orphans' Court Rule 3.1 ("Except where otherwise provided ... the pleading and practice [in Orphans' Court] shall conform to the pleading and practice in equity in the local court of Common Pleas") nor Pennsylvania Rules of Civil Procedure 1501 (equity practice shall conform to procedures in civil actions) and 1518 (precursor of Pa.R.Civ.P. 227.1 which provided that, in civil proceedings, issues not raised in exceptions are waived if no exceptions are filed) are "general rules" applicable to the type of order appealed from; the court observed that to require filing of post-trial motions in such a case would frustrate the Supreme Court's mandate in Orphans' Court Rule 3.1 that local rules should govern Orphans' Court matters. As the applicable local rule in the instant case states that exceptions shall not normally be filed to orders entered by the Orphans' Court, the appellants acted correctly in filing a direct appeal.

The dissent authored by my learned brother Brosky points out that the final sentence of the order appealed from states, "[j]urisdiction is

the power to select an administrator lies within the exclusive jurisdiction of the Register, and that the court was without jurisdiction to direct the Register to issue letters to an individual selected by the court. Alternatively, she contends that the court erred in its choice of the trust company as the new administrator; in appellant's view, she should have been chosen. We disagree with appellant's contentions, and hold that the court below acted within its power in directing the issuance of letters of administration to a particular party. Further, we find that the court below did not abuse its discretion in ordering the issuance of letters to the Bank. Accordingly, we affirm.

The decedent, Sandra Osborne, was divorced from her husband, appellee Leroy Osborne. She died intestate on June 16, 1984. Upon Sandra's death, however, Leroy applied to the Register of Wills for letters of administration for Sandra's estate. The Register granted Leroy's application. Appellant, Sandra's mother, petitioned the Orphans' Court division of the Court of Common Pleas to revoke the letters issued to Leroy. After a hearing on this issue, the court directed the Register to revoke the letters.[2] The court further ordered the Register to issue letters of administration to the Bank as a neutral third party. Appellant does not challenge the revocation of the letters from Leroy Osborne; she had requested the revocation. Instead, she appeals the portion of the order which issues the letters of administration to the Bank.

retained." According to the dissent, this statement demonstrates that the trial court anticipated the filing of exceptions before entry of a final, appealable order. I disagree with this reasoning. The orphans' court may have intended to retain supervisory powers over any future problems which might arise in the administration of the estate. Furthermore, even if the lower court does anticipate the filing of exceptions, I would not deem this fact dispositive of the question whether exceptions should *properly* or necessarily be filed in a given case.

2. For the reasons set forth in Part II, *supra,* the Orphans' Court found that the Register abused its discretion in issuing letters of administration to Osborne. Neither appellant nor appellee have appealed from the order revoking the letters issued to Osborne.

In order to more readily understand the issues presented in this case, it is necessary to review the applicable statutes and the routine procedures pertaining to the issuance of letters of administration. The jurisdiction of both the Register of Wills and the Orphans' Court division of the Courts of Common Pleas is outlined in Title 20, entitled Decedents, Estates and Fiduciaries. Section 711 of Title 20, governing the "[m]andatory exercise of jurisdiction through orphans' court division in general," provides in pertinent part:

... [T]he jurisdiction of the court of common pleas over the following shall be exercised through its orphans' court division:

\* \* \* \* \* \*

(12) Fiduciaries. The appointment, control, settlement of the accounts of, removal and discharge of, and allowance to and allocation of compensation among, all fiduciaries of estates and trusts, jurisdiction of which is exercised through the Orphans' Court division, *except that the register shall continue to grant letters testamentary and of administration to personal representatives as heretofore.*

(Emphasis added). Regarding the jurisdiction of the Register of Wills, 20 Pa.C.S.A. § 901 provides:

Within the county for which he has been elected or appointed, *the register shall have jurisdiction of* the probate of wills, *the grant of letters to a personal representative,* and any other matter as provided by law.

(Emphasis added).

Under typical procedure, an application is submitted to the Register requesting the grant of letters of administration. The order of priority for individuals entitled to a grant of letters is set forth by statute. 20 Pa.C.S.A. § 3155 states in relevant part:

### § 3155. Persons entitled

\* \* \* \* \* \*

**(b) Letters of administration.**—*Letters of administration shall be granted by the register,* in such form as the case shall require to one or more of those hereinafter mentioned and, *except for good cause, in the following order:*

(1) Those entitled to the residuary estate under the will.

(2) The surviving spouse.

(3) Those entitled under the intestate law as *the register, in his discretion,* shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons.

(6) If anyone of the foregoing shall renounce his right to letters of administration, *the register, in his discretion,* may appoint a nominee of the person so renouncing in preference to the persons set forth in any succeeding clause.

(Emphasis added).

When an interested party wishes to object to the grant of letters to the petitioner, he may file a caveat. 20 Pa.C.S.A. § 907 provides:

**§ 907. Certification of records to court**

Whenever a caveat shall be filed or a dispute shall rise before the register concerning ... the grant of letters ... *he may certify, or the court upon petition of any party in interest may direct the register at any stage of the proceedings to certify, the entire record to the court, which shall proceed to a determination of the issue in dispute.*

(Emphasis added). Thus, when a dispute arises regarding the Register's choice for the grant of letters, an interested party may either file a caveat with the Register or petition the Orphans' Court division for the matter to be transferred to the Orphans' Court for resolution.

Alternatively, an aggrieved party may appeal the Register's decision to the Orphans' Court division of the Court of Common Pleas. 20 Pa.C.S.A. § 908 provides in pertinent part:

§ 908. Appeals

(a) When allowed.—Any party in interest who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree ...

Upon the filing of an appeal, and after entry of security,[3] the Register normally transmits the record to the Orphans' Court. There, a petition is presented on the motion list for the award of a citation, directing all parties in interest to show cause why the appeal should not be sustained and the decree of the Register set aside. *See* 1 *Remick's Orphans' Court Practice,* § 4.06, 201 (1979).

The final relevant statutory provision, 20 Pa.C.S.A. § 3183, authorizes the Orphans' Court division to consider revocation *sua sponte* of letters of administration previously granted by the Register. Section 3183 provides:

§ 3183. Procedure for and effect of removal

*The court on its own motion may,* and on the petition of any party in interest alleging adequate grounds for removal shall, *order the personal representative to appear and show cause why he should not be removed, or, when necessary* to protect the rights of creditors or parties in interest, *may summarily remove him. Upon removal, the court may direct the grant of new letters testamentary or of administration by the register to the person entitled....* Any personal representative summarily removed under the provisions of this section may apply, by petition, to have the decree of removal vacated and to be reinstated, and, if the court shall vacate the decree of removal and reinstate him, it shall thereup-

---

**3.** 20 Pa.C.S.A. § 908(b) provides that "[t]he court ... may require a surety bond to be filed by anyone appealing from a decree of the register conditioned for the payment of any costs or charges that may be decreed against him."

on make any orders which may be appropriate to accomplish the reinstatement.

(Emphasis added).

Having recited the relevant statutory provisions and the procedure surrounding the granting of letters, we now consider the issues presented in the instant case.

## I.

Appellant first contends that the Orphans' Court division acted beyond its jurisdiction in directing the Register to issue letters of administration to the Bank. Appellant concedes that, upon removal of the case to the Orphans' Court division,[4] the court had the authority to revoke the letters which were previously granted by the Register.[5] According to appellant, however, after revoking the letters, the Orphans' Court must remand the matter to the Register, who will then entertain new applications for letters of administration. Appellant claims that the selection of a proper administrator is within the exclusive jurisdiction of the Register of Wills. Although we agree that the original selection of an administrator is normally a task within the jurisdiction of the Register, we hold that, upon a finding by the Orphans' Court that the Register has abused its discretion in the selection of the original administrator, the Orphans' Court may review the evidence presented, revoke the letters, and direct the Register to issue letters to the

---

**4.** Although the procedure employed for removal of the case to the Orphans' Court was not the normal procedure envisioned by the statute, we do not believe that this procedural irregularity is of any great importance. Appellant states that when she attempted to file her petition for revocation of letters with the Register, she was directed to proceed to the Orphans' Court. She then filed her petition and rule with the Orphans' Court, requesting that the letters issued to Osborne be revoked and that she be appointed administrator. It does not appear that the record was at any time formally certified by the Register to the Orphans' Court. However, the procedure followed was substantially similar to that which is authorized by 20 Pa.C.S.A. § 907, set forth *supra,* allowing the Register to transfer a case to the Orphans' Court when a caveat is filed or a dispute arises regarding the grant of letters.

**5.** *See* 20 Pa.C.S.A. § 3183, *supra.*

individual whom the court finds to be entitled to administer the estate.

Appellant cites several sections of Title 20 in support of her contention that only the Register of Wills may select the individual to whom letters of administration shall be issued. Appellant first cites Section 901, *supra,* which states that "the register shall have jurisdiction of ... the grant of letters." Appellant contends that the authority of the Register alone to select the individuals to whom letters of administration shall be issued is confirmed in Section 711(12), which defines the jurisdiction of the Orphans' Court as including "[t]he appointment, ... removal, and discharge of ... all fiduciaries ..., *except* that the register shall continue to grant letters ... of administration."

We agree that, as set forth by statute, the selection of the person to whom the initial grant of letters is to be made is normally [6] within the exclusive province of the Register. Upon review of the statutes pertaining to removal of the case to the Orphans' Court, however, we conclude that the court may, upon such removal, review the evidence to determine whether the Register abused its discretion, and if necessary, revoke the letters and direct the Register to issue letters to the individual whom the court finds is entitled. Two sections of Title 20 lead us to this conclusion. First, Section 907, *supra,* states that whenever a dispute arises before the Register concerning the grant of letters, either the Register or the court may certify the "entire record to the court, which shall proceed to a determination of the issue in dispute." No language of limitation is used to describe the authority of the Orphans' Court upon removal of the case from the Register; rather, the statute refers generally to "a dispute" regarding the grant of letters and

6. Under the procedure set forth in 20 Pa.C.S.A. § 907, *supra,* it is conceivable that the Register could certify a case to the Orphans' Court when a dispute arises, without first granting letters of administration. In such a case, the Orphans' Court would be in the position of directing the initial grant of letters of administration. We do not today determine whether the Orphans' Court would be acting within its power under those circumstances.

allows the Orphans' Court to determine "the issue in dispute."

The second statute which leads us to conclude that the court may determine the individual who is entitled to the grant of letters is 20 Pa.C.S.A. § 3183, set forth *supra*. Section 3183, entitled "Procedure for and effect of removal," states that "[u]pon removal, *the court may direct the grant of new letters ...* by the Register to the person entitled." Appellant contends that this section authorizes the Orphans' Court division to direct the Register to remove a personal representative and to grant new letters of administration to the individual *whom the Register determines* is entitled. We disagree with this construction of the statute.

■■ The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the legislature. *Young v. Young*, 507 Pa. 40, 488 A.2d 264 (1985); *Patton v. Republic Steel Corp.*, 342 Pa.Super. 101, 492 A.2d 411 (1985); 1 Pa.C.S.A. § 1921(a). When the words of a statute are ambiguous or susceptible to more than one interpretation, the intention of the General Assembly may be ascertained by considering the object to be obtained by a statute and the consequences of a particular interpretation; the court must presume that the legislature does not intend a result that is absurd or unreasonable. *Zimmerman v. O'Bannon*, 497 Pa. 551, 556, 442 A.2d 674, 677 (1982); *Goodman v. Kennedy*, 459 Pa. 313, 328, 329 A.2d 224, 232 (1974); *Fireman's Fund Ins. v. Nationwide Mut. Ins.*, 317 Pa.Super. 497, 502, 464 A.2d 431, 434 (1983); 1 Pa.C.S.A. §§ 1921(c)(6), 1922(1).

■■ The statute in question, 20 Pa.C.S.A. § 3183, is certainly not free from ambiguity; the words "the court may direct the grant of new letters by the Register to the person entitled" may be interpreted as permitting the court to direct the Register to issue letters to either the person whom the Register finds to be entitled or to the person whom the court finds to be entitled. We find that the obvious purpose of the section is to provide a higher forum for resolution of disputes arising from the grant of letters;

this forum shall determine whether error has been committed by the Register in its grant of letters. Following appellant's reasoning, the court, after gathering all the evidence and concluding that the Register erred in its choice of administrator, would have the power only to revoke the letters, and would then be required to remand the matter back to the Register. The Register would then reconsider the application, re-gather the evidence, and choose another administrator. We cannot agree that the legislature would intend such an unreasonable result; such a circular procedure would involve a needless waste of judicial and administrative time and expense. We therefore reject appellant's contention in favor of the more reasonable construction. *See e.g. Yeager Unemployment Compensation Case,* 196 Pa.Super. 162, 172, 173 A.2d 802, 807 (1961) (proposed construction of statute rejected because "it would create an insurmountable administrative obstacle....").

The conclusion which we reach today—that upon removal of the case to the Orphans' Court division, the court may direct the Register to issue letters of administration to the individual whom the court finds entitled—is in accordance with construction given the predecessors to the statutes at issue in the instant case. In *In Re Neidig,* 183 Pa. 492, 38 A. 1033 (1898), the Register of Wills issued letters of administration to an individual who was nominated by the alleged next-of-kin of the decedent. The actual next-of-kin then petitioned to have the letters revoked and issued to their nominee. The Orphans' Court division considered the question and found that the Register had erred; the court revoked the previously issued letters and directed the Register to issue letters to the nominee of the next-of-kin. On appeal, the Supreme Court affirmed, stating:

> ... [T]he learned judge found the facts as now conceded to be correct, viz: 'That the Ocker family are the next of kin, and the letters issued to Mr. Rupley were improvidently granted.' etc., and he accordingly vacated said letters. *He might have stopped there and left to the register of wills the granting of letters to one or more*

*of the next of kin, but clearly he was not bound to do so.* It was doubtless evident to him, as it is to us, that the questions that might again arise before that officer had not only been prejudged, but were erroneously decided by him. Owing to the manner in which the case appears to have been heard and disposed of by the register, those questions were brought before the court below. It was therefore entirely proper to incorporate in the decree the order that letters be issued by the register to the nominee of the next of kin, etc.

(Emphasis added). 183 Pa. at 498, 38 A. 1033.

In *Padelford's Estate,* 189 Pa. 634, 42 A. 287 (1899), the Register had rejected the three claimants and selected a disinterested party for the grant of letters of administration d.b.n.c.t.a.[7] One of the claimants then appealed to the Orphans' Court division of the Philadelphia County Court of Common Pleas. The Orphans' Court found that the Register had erred in its choice of administrator; the court reversed the Register and directed that letters be issued to a bank. On appeal, the Pennsylvania Supreme Court affirmed, stating:

> The power of the orphans' court to correct such errors of the register by vacating the letters granted by him and directing him to issue letters to another cannot be doubted.

189 Pa. at 738, 42 A. 287.[8] Several more recent common pleas cases are in accord. *See e.g. In Re Estate of Mullen,* 120 P.L.J. 320 (1972); *Kiker Estate,* 10 Pa. D & C 2d 674

---

**7.** Letters of administration are defined as a "formal document issued by probate court appointing one an administrator of an estate." *Black's Law Dictionary* 814 (5th ed. 1979). Letters of administration d.b.n.c.t.a. ("de bonis non cum testamento annexo") are defined by Black's as a "document issued by a probate court to one who is thereby authorized to administer estate in place of named executor in accordance with will of testator." *Id; see also* T. Atkinson, *Handbook of the Law of Wills,* at 5 (2d ed. 1953).

**8.** Although the Supreme Court in *In Re Neidig* and *Padelford's Estate, supra,* construed an early predecessor of the current statute (Act, 1832 March 15, P.L. 135, repealed in part by the Register of Wills Act of 1917, Act 191, P.L. 415), the reasoning applied in these cases is equally persuasive in interpretation of the current statute.

(1957). Thus, we conclude that the Orphans' Court had the authority, upon finding that the Register abused its discretion in its choice of administrator, to revoke the letters of administration and direct the Register to issue letters to the proper individual.[9]

## II.

■ Appellant alternatively claims that, even if the court had the authority to choose an administrator, the court erred in directing the Register to issue letters of administration to the Bank; appellant believes that she should have been chosen.[10]

9. *Schulz Estate*, 392 Pa. 117, 139 A.2d 560 (1958), cited by appellant, is not inconsistent with our holding today. The Supreme Court in *Schulz* stated:

> The statute commits to the Register of Wills, *in the first instance*, the duty to grant letters of administration and in the performance of that duty the Register acts in a judicial capacity.

(Emphasis added). 392 Pa. at 123, 139 A.2d at 563. Appellant points out that the *Schulz* Court went on to state that "[o]n appeal from his [the Register of Wills] action judicial review is confined to a determination whether the Register of Wills has abused his discretion in the appointment of an administrator." *Schulz*, 392 Pa. at 123, 139 A.2d at 563. However, the Court in *Schulz* was not addressing the issue which is now before us: whether, upon finding that the Register has erred in its choice of administrator, the Orphans' Court may set aside the appointment and direct the issuance of letters to the qualified individual. Instead, the *Schulz* Court utilized this language in setting forth the often-stated standard of review which must be followed when reviewing an action of the Register of Wills. For appellant to take this statement out of context is absurd: certainly, even appellant would concede that the statute clearly authorizes the Orphans' Court to take certain affirmative actions upon determining that the Register erred in its choice of administrator. *See e.g.* 20 Pa.C.S.A. § 3183, set forth *supra*. (The court ... may ... summarily remove him [the personal representative] ).

10. In her brief, appellant raises a third issue: "Should the Register of Wills have given notice to and secured a renunciation from [appellant] before granting letters of administration to the decedent's ex-husband?" Appellant claims that the Register acted improperly when he granted letters of administration without notice to appellant, and that as a result, appellant was unable to make application for letters. Even if the Register in fact failed to give notice to appellant, we fail to see how appellant was prejudiced. In her petition seeking revocation of the letters issued to Osborne, appellant requested that the Orphans' Court appoint her as administrator. The court considered and properly rejected this request, as discussed *infra*.

The Register initially granted the application of the decedent's ex-husband, Leroy Osborne. The appellant, who is the mother of the decedent, then attempted to file a petition for revocation with the Register; the Register directed her to file the petition with the Orphans' Court. In considering whether the letters of administration previously granted to Leroy Osborne should be revoked, the court took notice of the marital settlement agreement entered between the decedent and Osborne. Paragraph 11 of the agreement provided in part:

11. Husband does hereby remise, release, quitclaim, and forever discharge Wife, or the estate of Wife, from any and every claim ..., whether arising out of any formal contract, ... or under the Intestate Laws or the right to take against the Wife's Will....

The agreement was incorporated by reference into the divorce decree, which was not challenged. Based upon this agreement and the fact that Osborne owed support arrears payable to the estate of the decedent, the Orphans' Court concluded that he was not a proper choice to stand in a fiduciary position as administrator of the estate. *See In Re Estate of Dobson*, 490 Pa. 476, 417 A.2d 138 (1980); *Rafferty Estate*, 377 Pa. 304, 105 A.2d 147 (1954).

The statutory provision for the order of priority in choosing an administrator is 20 Pa.C.S.A. § 3155(b), set forth in full, *supra*. The relevant portion of that section provides, that, except for good cause, letters of administration are to be granted in the following order:

\* \* \* \* \* \*

(3) Those entitled under the intestate law as the register, in his discretion, shall judge will best administer the estate, giving preference, however, according to the sizes of the shares of those in this class.

(4) The principal creditors of the decedent at the time of his death.

(5) Other fit persons.

Under the intestacy laws, the entire estate will pass in equal parts to the two children of the decedent. *See* 20

Pa.C.S.A. § 2103. Thus, the appellant, who is not entitled under the intestate law to any portion of the estate, falls into the fifth category, "other fit persons," along with the Bank. With this observation in mind, we must determine whether the court erred in choosing the Bank to act as administrator rather than appellant.

In *Schulz Estate*, 392 Pa. 117, 122, 139 A.2d 560, 562–3 (1958), our Supreme Court stated:

> Antagonism and unfriendly feelings between the applicant for letters of administration and other members of the class may be sufficient to constitute a disqualification. In *Friese's Estate*, 317 Pa. 86, 89, 90, 176 A. 225, we said: 'In addition to the fact that she is required to have an actual interest in the estate, she may be further disqualified by being unfit to administer. Among these disqualifications are insolvency, non-residence, conviction of crime, claim of interest hostile to the estate, *unfriendly feeling between the parties, dissatisfaction and antagonism between the widow and the children.... See also Warner's Estate*, 207 Pa. 580, 584, 57 A. 35; *Levan's Appeal*, 112 Pa. 294, 298, 3 A. 804; *Hassinger's Appeal*, 10 Pa. 454; *Ellmaker's Estate*, 4 Watts 34; *Welch's Appeal*, 1 Pennypacker 9.'

(Emphasis in original). *See also Rafferty Estate*, 377 Pa. 304, 306, 105 A.2d 147, 148 (1954) ("[t]he personal interest of a fiduciary being in conflict with that of the estate and the unfriendly feelings between the heirs constitute sufficient cause for removal" of an administrator).

In *Schulz Estate, supra,* the Register issued letters of administration d.b.n.c.t.a. to a disinterested party, denying the petitions of the potential heirs. One of the petitioners appealed, and the Supreme Court affirmed:

> The Register, in appointing C.F. Witmer, a stranger, recognized that the appellant was clearly antagonistic to and on an unfriendly basis with the appellees, and vice versa. This antagonism has been the source of the extensive litigation between the parties and clearly constitutes a disqualification under the circumstances not only

of appellant but also of the entire class of residuary legatees, all of whom have taken part in some manner or other in such litigation. Appellant's argument that such antagonism has not been shown is without merit. The entire record of this estate, including the record before the various courts, was admitted into evidence and, even if it were not, we could take judicial notice thereof. Appellant's antagonism and unfriendly feelings toward appellees clearly disqualified her for appointment as the administrator.

392 Pa. at 122–123, 139 A.2d at 563.

■ In the instant case, the court below concluded that, "[r]eal or fancied, there is considerable tension between the decedent's mother and the appointed administrator." (Lower court opinion at 3). In reaching this conclusion, the court considered the fact that appellant retained custody of her grandchildren after her daughter's death until the court awarded custody to Osborne, the natural father. Furthermore, the record shows that appellant filed a motion for preliminary injunction in an unsuccessful attempt to prevent the distribution of certain life insurance proceeds to Osborne.[11] The antagonism between Osborne, who is the guardian of the decedent's children, and the appellant, which is evidenced by the past litigation, clearly disqualified appellant from acting as administrator. The lower court therefore properly selected the Bank, a competent and disinterested party, to act as administrator of the estate.

Accordingly, the order directing the Register to issue letters of administration to the Dauphin Deposit Bank and Trust Company is affirmed.

CIRILLO, President Judge, files a dissenting opinion in which DEL SOLE, J., joins.

BROSKY, J., files a dissenting opinion.

11. Both the custody petition and the motion for preliminary injunction were made a part of the official record in the case at bar.

CIRILLO, President Judge, dissenting:

I respectfully dissent.

The Register of Wills has the statutorily granted power to determine who may properly receive letters of administration.[1] There is no legal justification, statutory or otherwise, for the courts to usurp this power. The majority's contrary conclusion compels me to dissent.

As the majority recognizes, 20 Pa.C.S. § 901 provides that "The register shall have jurisdiction of ... the grant of letters...." Moreover, 20 Pa.C.S. § 711(12) defines the jurisdiction of the Orphans' Court as including "[t]he appointment, removal, and discharge of ... all fiduciaries of estates ... *except* that the register shall continue to grant letters testamentary and of administration...." (emphasis added). As the basis for its decision, however, the majority relies on a misinterpretation of two separate statutes, 20 Pa.C.S. §§ 907 and 3183.

Section 907 provides that when a dispute arises before the register concerning the grant of letters, the register, or the court upon petition, may certify the entire record and then the court "shall proceed to a determination of the issue in dispute." Section 3183 states that upon removal of a personal representative, "the court may direct the grant of new letters ... by the register to the person entitled...." In this case of first impression, the majority interprets these statutes to vest the courts with the authority to force the register to issue letters to the individual that the court deems worthy. This, the majority reasons, effectuates the intent of the legislature.

In my view, the reasonable intent of the legislature was to have the court remand the matter back to the register, if the court determined that the register erred in issuing letters to an administrator. This statutory construction would not, as the majority suggests, lead to an unnecessary

---

1. *See generally Walsh v. Tate,* 444 Pa. 229, 237–38, 282 A.2d 284, 288 (1971) (discussing 1968 amendment to Pennsylvania Constitution removing constitutional status formerly accorded the Philadelphia Register of Wills).

waste of judicial resources. Conversely, remanding the matter would enable the register to perform his duties without the court encroaching upon the province of the register's statutorily granted powers. It would require less time and expense for the court to allow the register to do his job, in accord with the court's proceedings, as opposed to the court doing itself what the register is mandated to do.

The limited standard of review that applies to this case was enunciated by the Pennsylvania Supreme Court in *Schulz Estate*, 392 Pa. 117, 139 A.2d 560 (1958). After stating the law that the Register of Wills has the initial duty to grant letters of administration, our Supreme Court held that "[o]n appeal from his action judicial review is confined to a determination whether the Register of Wills has abused his discretion in the appointment of an administrator." *Schulz*, 392 Pa. at 123, 139 A.2d at 563 (citing *Phillip's Estate*, 293 Pa. 351, 143 A. 9 (1928); *McMurray's Estate*, 256 Pa. 233, 100 A. 798 (1917)). *See also Lizenkon Estate*, 455 Pa. 604, 316 A.2d 894 (1974) (affirming trial court's vacation of decree by register and authorizing register to entertain a petition for the appointment of a neutral administrator).

I recognize, as does the majority in footnote 9, that the issue now before us is not identical to the precise issue presented in *Schulz*. Nonetheless, a fair and reasonable reading of *Schulz* indicates that the limitations on judicial review promulgated in that case apply with equal force to support my position in the case now before us.

In sum, I think it was incorrect for the majority to expand the scope of judicial review and usurp the function of the Register of Wills. Accordingly, I cannot join the majority's opinion.

DEL SOLE, J., joins.

BROSKY, Judge, dissenting:

I am unable to join in the well-reasoned opinion of the majority because my examination of the record and the

decisional law of this Commonwealth leads me to conclude that we have no appealable issues before us.

As I see it, the Order of October 23, 1984,[1] is not a final order, and the final sentence therein so states that "[j]urisdiction is retained." This implicates the filing of post-trial motions pursuant to Pa.R.C.P. 227.1 and the entry of a *final* order after disposition thereof. The record before us discloses the filing of no such motion or order.

Pa.R.C.P. 227.1 provides:

Rule 227.1. Post-Trial Relief

(a) After trial and upon the written Motion for Post-Trial Relief filed by any party, the court may

(1) order a new trial as to all or any of the issues; or

(2) direct the entry of judgment in favor of any party; or

(3) remove a nonsuit; or

(4) *affirm, modify or change the decision* or decree nisi; or

(5) enter any other appropriate order.

(b) Post-trial relief may not be granted unless the grounds therefor,

(1) if then available, were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial; and

**Note:** If no objection is made, error which could have been corrected in pre-trial proceedings or during trial by timely objection may not constitute a ground for post-trial relief.

(2) *are specified in the motion. The motion shall state how the grounds were asserted in pre-trial proceedings or at trial. Grounds not specified are*

---

**1.** Although the appeal was filed from the order of October 3, 1984, that order was subsequently amended on October 23, 1984, to reflect the reference to the administrator-bank as "Administrator D.B.N." In all other respects, the order of October 23, 1984, is the same as the one entered October 3, 1984, and the appeal was docketed well within the 30–day period allowed from October 23, 1984.

*deemed waived unless leave is granted upon cause shown to specify additional grounds.*

(c) *Post-trial motions shall be filed within ten days after*

(1) verdict, discharge of the jury because of inability to agree, or nonsuit in the case of a jury trial; or

(2) notice of nonsuit or the *filing of the decision or adjudication* in the case of a trial without jury or *equity trial.*

If a party has filed a timely post-trial motion, any other party may file a post-trial motion within ten days after the filing of the first post-trial motion.

(d) A motion for post-trial relief shall specify the relief requested and may request relief in the alternative. Separate reasons shall be set forth for each type of relief sought.

(e) If a new trial and the entry of judgment are sought in the alternative, the court shall dispose of both requests. If the court directs the entry of judgment, it shall also rule on the request for a new trial by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the request for a new trial.

(f) The party filing a post-trial motion shall serve a copy promptly upon every other party to the action and deliver a copy to the trial judge.

(Emphasis supplied).

Neither the instant record nor the docket entries before us indicate the filing of any post-trial motion. Thus, I would be constrained to find the issues addressed by the majority waived. *Szakmeister v. Szakmeister,* 344 Pa.Super. 465, 496 A.2d 1199 (1985); *see also Hanik v. Pennsylvania Power Co.,* 308 Pa.Super. 352, 454 A.2d 572 (1982) (under former Pa.R.C.P. 1518, governing post-trial relief following an equity trial, rescinded and now replaced by present Rule 227.1, matters not addressed in exceptions [now post-trial motions under Rule 227.1] are deemed

waived). Alternatively, I would be constrained to quash the instant appeal for lack of a final order in the instant record. *Szakmeister, supra* (appeal quashed where final order not entered on docket after failure to file post-trial motion).

I do not agree with the rationale set embraced by the majority in endnote 1 and reiterate my position that we have no appealable issues before us.

The majority's reliance on *Estate of Kotz*, 486 Pa. 444, 406 A.2d 524 (1979), that Supreme Court Rule of Orphans' Court 3.1, conforming equity practice to that of the local Court of Common Pleas, Pa.R.C.P. 1501, providing that equity proceedings shall follow the rules of procedure relating to civil actions, and Pa.R.C.P. 227.1, regarding post-trial relief, are not general rules applicable to the instant order in question is misplaced.

First, *Kotz* never mentions Pa.R.C.P. 1501, but, rather, it discusses Pa.R.C.P. 1518 which concerned post-trial relief following an equity proceeding. This Rule was rescinded effective January 1, 1984, and the note following indication of this rescission refers to Pa.R.C.P. 227.1, which *Kotz*, again, does not mention because the latter rule became effective after the decision in *Kotz*. Secondly, and more to the point of my disagreement with the majority, the order appealed from in *Kotz* was considered by that court to be a final appealable one, thus obviating the necessity for the filing of exceptions.[1]

The majority, in endnote 1, states that Lebanon County Local Rule of Orphans' Court 7.1A does not, by its very terms, require the filing of exceptions to orders or decrees because no act of assembly, general rule or special order exists expressly conferring that right. Lebanon County Local Orphans' Court Rule 7.1a provides:

No exceptions shall be filed to orders or decrees entered in proceedings *unless the right to except thereto is*

---

1. Throughout this dissent, I refer to "exceptions" because the Rules which I discuss employ that terminology. That term, of course, is now embraced in the phrase "post-trial relief." *See* Pa.R.C.P. 227.1, *supra.*

*expressly conferred by act of assembly, by general rule,
or by special order of court,* and decrees *other than
those to which exceptions are so allowed to be taken,*
shall be final and definitive.

(Emphasis supplied).

"General Rule" is defined in the Judicial Code (42 Pa.C.
S.A. §§ 101 *et seq.*) as follows:

"General rule." A rule or order promulgated by the
governing authority.

42 Pa.C.S.A. § 102. In turn, the Judicial Code assigns the
following definition to "Governing Authority:"

"Governing authority."

(1) The Supreme Court; or

(2) any agency or unit of the unified judicial system
exercising a power or performing a duty pursuant to
section 1721 (relating to delegation of powers).

*Id.*

Section 1721 of the Judicial Code (42 Pa.C.S.A. § 1721),
referred to above, empowers the Pennsylvania Supreme
Court to delegate supervisory and administrative powers to
any unit of the unified judicial system. This delegation
authority is derived from Article V, Schedule § 1 of the
Pennsylvania Constitution which, in turn, is rooted in the
ancient King's Bench Power. *See* 42 Pa.C.S.A. § 502. The
unified judicial system includes the Court of Common Pleas
of this Commonwealth. Pa. Const. art. V, § 1; 42 Pa.C.S.A.
§ 301(4). Administrative powers of a governing authority,
which includes within the latter term the unified judicial
system (*see* 42 Pa.C.S.A. § 102, *supra,* relating to defini-
tions), encompass the power to prescribe and modify gener-
al rules for the "[p]ractice, procedure and conduct of all
courts ... *if such rules are consistent with the Constitu-
tion of Pennsylvania* and neither abridge, enlarge nor
modify the substantive rights of any litigant...." 42 Pa.C.
S.A. § 1722(a)(1); Pa. Const. art. V, § 10(c).

Thus, the gravamen of my quarrel does not lie with the
power of the various Common Pleas Courts to enact local

rules of court. Rather, I question the majority's interpretation of Local Rule 7.1A. Instantly, the majority interprets Local Orphans' Court Rule 7.1A as disallowing the filing of exceptions because *no* statutes, general rules or orders exist otherwise to allow the filing of exceptions (Majority Op., pp. 203–204, n. 1). Such a reading of this rule would, in my view, exalt a local rule of Court over rules having statewide applicability in civil actions and issued pursuant to directive of the Pennsylvania Supreme Court.

Orphans' Court Rule 7, adopted by Order of the Pennsylvania Supreme Court on November 24, 1975, effective January 1, 1976, provides:

Rule 7. Exceptions

7.1 Exceptions

*Exceptions shall be filed* at such place and time, shall be in such form, copies thereof served and disposition made thereof as local rules shall prescribe.

(Emphasis added).

I cannot glean, from my reading of this Rule of statewide applicability, any language which would permit a court of common pleas to adopt a local rule denying a litigant the right to file exceptions from non-final orders or decrees of that court. Rather, Rule 7 states that "[e]xceptions shall be filed ..." and leaves to the discretion of the common pleas court the procedure for filing and disposition thereof. It does not, as the majority contends in endnote 1, vest in a court of common pleas the discretion to consider whether or not the filing of exceptions shall be permitted to non-final Orphans' Court orders and decrees. The interpretation cast upon Lebanon County Orphans' Court Rule 7.1A by the majority would render it inconsistent with the directive of Article V, § 10(c) of the Pennsylvania Constitution and 42 Pa.C.S.A. § 1722(a)(1) that rules may be enacted by a governing authority only if such rules are consistent with the Constitution of Pennsylvania and with the Pennsylvania Rules of Civil Procedure, as well. Such inconsistent local rules are deemed invalid. *Byard F. Brogan, Inc. v. Holmes Elec. Protective Co.*, 501 Pa. 234, 460 A.2d 1093 (1983);

*Sporkin v. Affinito,* 326 Pa.Super. 481, 474 A.2d 343 (1984); Pa.R.C.P. 239(b) ("Local rules shall not be inconsistent with any *general rule of the Supreme Court* or any Act of Assembly."; emphasis supplied); Supreme Court Rule of Orphans' Court 1.2.[2] The Comment following subsection (b) of Pa.R.C.P. 239 states that the language contained therein is in furtherance of the policy "that a general rule of civil procedure normally preempts the subject covered [by the local rule]."

Moreover, 42 Pa.C.S.A. § 323 grants the courts of this Commonwealth the power to adopt rules of court "except as otherwise prescribed by general rules...." This aforequoted phrase was interpreted by the *Brogan* court to require consistency of local rules of court with the Pennsylvania Rules of Civil Procedure. In this context, I note with interest the qualifying language in Lebanon County Orphans' Court Rule 7.1A which states that the filing of exceptions is permissible if the right is expressly conferred by general rule, etc., to be essentially identical in import and meaning with the exception carved out in § 323's grant of authority to courts to adopt local rules.

Thus, applying the rationale of the *Brogan* court to the instant matter, I would conclude, unlike the majority here, that the qualifying language in Lebanon County Orphans Court Rule 7.1A, *supra,* directs the filing of exceptions and, in so doing, defers to a higher promulgating authority of general rules of civil procedure, specifically, the Pennsylvania Supreme Court's adoption of Pa.R.C.P. 227.1, *supra,* regarding the filing of post-trial motions, Supreme Court Rule of Orphans' Court 7, providing for the filing of exceptions to non-final orders and decrees of the Orphans' Court,

---

**2.** This Rule provides:

 1.2. Local Rules

 The Orphans' Court of the several judicial districts of this Commonwealth may adopt local rules regulating practice and procedure, *but such rules shall not be inconsistent with any rule adopted by the Supreme Court of this Commonwealth or any Act of Assembly regulating the practice and procedure in the Orphans' Courts of this Commonwealth.*

 (Emphasis supplied).

and Supreme Court Rule of Orphans Court 3.1, conforming local Orphans' Court procedure to equity practice.[3] To read Lebanon County Orphans' Court Rule 7.1A in any other light would, in my view, render that rule inconsistent with the Pennsylvania Rules of Civil Procedure, *Byard F. Brogan, Inc., supra; Sporkin v. Affinito, supra,* the Pennsylvania Constitution, art. V, § 10(c), *supra,* and 42 Pa.C.S.A. § 1722(a)(1), *supra.*

---

**3.** It seems evident that the need for this qualifying language would be obviated if the intent of the drafters of Lebanon County Local Orphans' Court Rule 7.1A were to disallow the filing of exceptions. Since I conclude in my discussion, *supra* in text, that this disallowance is constitutionally and legislatively impermissible, this language is necessary to bring the Rule in conformity with the law of this Commonwealth.